**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL O'GRADY, REEM ODEH, JOHN LYNCH, and PATRICK FELDNER, | ) ) ) | Case No. |
| Plaintiffs, | ) ) ) | |
| *v.* | ) ) | |
| ILLINOIS STATE SENATOR MICHAEL E. HASTINGS, MAYOR KYLE R. HASTINGS, TRUSTEE KYLE HASTINGS II, AS-YET UNKNOWN OFFICERS OF THE VILLAGE OF ORLAND HILLS POLICE DEPARTMENT, CLERK CINDY M. MURRAY, AS-YET UNNAMED CO-CONSPIRATORS *in their individual and official capacities*; the VILLAGE OF ORLAND HILLS, and ORLAND TOWNSHIP. | ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

**COMPLAINT**

NOW COME Plaintiffs, PAUL O'GRADY, REEM ODEH, JOHN LYNCH, and

PATRICK FELDNER, by their attorneys LOEVY & LOEVY, for their complaint against

Defendants, Illinois Senator MICHAEL E. HASTINGS, Mayor KYLE R. HASTINGS, Trustee

KYLE HASTINGS II, as-yet unknown VILLAGE OF ORLAND HILLS POLICE OFFICERS,

Clerk CINDY M. MURRAY, as-yet unnamed CO-CONSPIRATORS, the VILLAGE OF

ORLAND HILLS, and ORLAND TOWNSHIP, and allege as follows:

**INTRODUCTION**

1.      On December 3, 2024, a group of citizens gathered to conduct a lawful political

caucus when a mob, led by government officials from a rival political party, descended upon the

caucus site.

2.     These officials and their mob were not there to participate in the political process, they came to suppress it. Acting in conspiracy, they used physical and verbal intimidation tactics to prevent the caucus, being held by members of their rival political party, from successfully assembling, speaking, and voting for their slate of candidates.

3.     This lawsuit seeks redress for the harm caused by this unlawful abuse of power, in violation of federal and state laws.

## JURISDICTION AND VENUE

4.     This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to redress the Defendants' tortious conduct and their deprivation of Plaintiffs' rights secured by the U.S. Constitution.

5.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of their state-law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper under 28 U.S.C. § 1391(b). Plaintiffs reside in this judicial district. The events and omissions giving rise to Plaintiffs' claims occurred within this judicial district.

## PARTIES

7.     Plaintiff Paul O'Grady is a resident of Orland Township, Chairman and Member of the Orland Township Together Party, and Supervisor of Orland Township.

8.     Plaintiff Reem Odeh is a resident of Orland Township and Member of the Orland Township Together Party.

9.     Plaintiff John Lynch is a resident of Orland Township, Member of the Orland Township Together Party, and former Trustee for Orland Township.

10.    Plaintiff Patrick Feldner is a resident of Orland Township, Member of the Orland Township Together Party, and former Trustee for Orland Township.

11.     Defendant Michael E. Hastings, Illinois State Senator, is a resident of Orland Township and Member of the Orland Township United Party. Defendant-Senator Hastings is sued in his individual and official capacities.

12.     Defendant Kyle R. Hastings, Mayor of the Village of Orland Hills, is a resident of Orland Township and Member of the Orland Township United Party. Defendant-Mayor Hastings is sued in his official and individual capacities. On information and belief, as Mayor of the Village of Orland Hills, Defendant Kyle R. Hastings is a final policymaker for the Village of Orland Hills.

13.     On information and belief, as-yet unknown Officers of the Village of Orland Hills Police Department participated in the events described in the Complaint by escorting Defendant-Mayor Hastings in a police vehicle to the caucus site. These unknown officers accompanied Defendant-Mayor Hastings during the events that followed, including Defendant-Mayor Hastings' unconstitutional actions within the caucus venue. These officers are sued in their individual and official capacities

14.     Defendant Kyle Hastings II, Trustee of the Village of Orland Hills, is a resident of Orland Township and Member of the Orland Township United Party. Defendant-Trustee Hastings is sued in his official and individual capacities.

15.     Defendant Cindy M. Murray, Clerk of Orland Township, is a resident of Orland Township and Member of the Orland Township United Party. Defendant Murray is sued in her official and individual capacities.

16.     As-yet unnamed co-conspirators who agreed to assist one or more named Defendants in committing the torts alleged herein. These as-yet unnamed co-conspirators are sued in their individual and official capacities.

3

17.     Defendant Village of Orland Hills ("Village") is an Illinois municipal corporation in Cook County, Illinois. At certain times relevant to this action, the Village was the employer of Defendant Kyle R. Hastings, Defendant Kyle Hastings II, and as-yet unknown Village of Orland Hills Police Officer Defendants, and is therefore a necessary party to this lawsuit.

18.     Defendant Orland Township is an Illinois municipal corporation in Cook County, Illinois. At certain times relevant to this action, the Township was the employer of Defendant Cindy M. Murray and as-yet unnamed co-conspirators who agreed to assist in the torts alleged herein, and is therefore a necessary party to this lawsuit.

19.     Plaintiff sues each of the individual Defendants who held public office in his or her individual and official capacities.

## FACTS

20.     Orland Township, located in Cook County, is 36 square miles, has over 100,000 residents, and comprises four territories: Orland Park, Orland Hills, a portion of Tinley Park, and unincorporated Orland Township. There are eight elected offices at the Orland Township level, with various elected and appointed officials within each territory, which comprise the greater Township.

21.     The Hastings family not only holds the office of Mayor of the Village of Orland Hills, by Defendant Kyle R. Hastings, but his wife, Mary Hastings, is the former Executive Director of Orland Township. Their children also hold several offices. One son, Defendant Michael E. Hastings, is an Illinois State Senator from the 19th District (which covers portions of 18 communities, including Orland Hills, Orland Park, and Tinley Park). Another son, Defendant Kyle Hastings II, is a Trustee of the neighboring Village of Orland Hills. Their daughter, Kate Hastings, was on the Moraine Valley Community College Board of Trustees (with one campus

4

located in Tinley Park). Collectively, the Hastings enjoy a political heavyweight status in Orland Township that facilitated the misconduct described below.

22.     The Hastings' political machine is called Orland Township United Party (OTU). The opposing party, which has no dynasty, is the Orland Township Together Party (OTT). Its Chairman is Plaintiff Paul O'Grady, the Township Supervisor. Mr. O'Grady has served as Supervisor since 2009.

23.     On December 3, 2024, at around 4:30 pm, Mr. O'Grady arrived at the Orland Chateau banquet hall in Orland Park, Illinois, to set up for a caucus of the OTT Party.

24.     He was hosting the caucus in his capacity as Chairman of OTT Party.

25.     In preparation for the political event, Mr. O'Grady had used his own money and money contributed to the Friends of Paul O'Grady PAC to rent the venue, where citizens from the community would soon arrive to caucus for a slate of OTT Party candidates—Plaintiffs—to run in the upcoming April 2025 consolidated Orland Township election.

26.     The caucus was being held because the OTT Party had missed the deadline to slate electors by petition, as it had always done in previous elections. The OTT Party had missed the deadline because it did not receive the required mailed notice of the deadline for the petition, leaving the caucus as the only timely way to enter its candidates in the election.

27.     Sending notice is the responsibility of the Clerk of Orland Township. The Clerk, Defendant Cindy M. Murray, is a member of the OTU Party. Defendant Murray had previously run with and on the OTT slate multiple times, and knew OTT was an established political party as of 2021. On information and belief, Defendant Murray mailed notices to both the Democratic and Republican committeepersons in Orland Township, but intentionally withheld the OTT

5

notice to prevent OTT from participating in the election and did so pursuant to an agreement or understanding with other Defendants to accomplish this illegal purpose.

28.     Defendant Murray's failure to send this notice to the OTT Party caused it to miss the deadline for sending a required notice to the Cook County Clerk's Office of OTT's intent to run as an established party in the February 2025 primary.

29.     This was Defendants' first attempt to keep Plaintiffs off the ballot in the consolidated April 2025 election.

30.     After missing the notice deadline, the OTT Party chose the alternative option permitted under Illinois election law: to conduct a caucus by an established political party.

31.     This would allow the OTT Party to still enter its slate of candidates in the April 2025 election, despite Defendant Murray's first attempt to thwart their nominations.

32.     Plaintiff O'Grady took each of the legally required steps to hold the caucus in place of entering the primary election.

33.     The OTT Party notified the Orland Township Clerk of its intent to caucus by written notification and publication in the press, as required under election law.

34.     Plaintiff O'Grady also diligently organized the proceedings to adhere to the Illinois Township Caucus Guide and other applicable statutory election requirements.

35.     Plaintiff O'Grady assembled tables for a multi-step registration and check-in process to ensure abiding by all applicable election rules.

36.     The first table was designated for citizens to verify that they were registered to vote in Orland Township.

37.     The second table was to ensure voters had not already signed a petition in support of a different political party, as election laws require caucus-goers to be affiliated with the political party holding the caucus.

38.     The third table was where citizens would sign an affidavit in support of the OTT Party, as was required to participate in the caucus.

39.     In addition to adhering to the requirements, Plaintiff O'Grady wanted to ensure a smooth process for any eligible citizen who wished to participate in the caucus.

40.     He ensured the space had ingress and egress.

41.     He brought an audio/visual system and a detailed presentation to explain the rules governing the caucus to the citizens who attended.

42.     He provided pizza, drinks, and a one-man band, all of which were also paid for out of his pocket and Friends of Paul O'Grady PAC.

43.     This was an exercise of democracy.

44.     After Plaintiff O'Grady finished setting up the caucus check-in process, he awaited the arrival of the caucus-goers.

45.     Plaintiff O'Grady had come to know many of the engaged citizens well over the 15 years he had served as the Orland Township Supervisor, including a core group of a few hundred senior citizens who consistently showed up at events over the years.

46.     At around 5:00 pm, citizens started showing up to the caucus venue.

47.     Although Plaintiff O'Grady did not recognize any of them as the citizens who frequented his events, he welcomed the arrivals inside.

48.     He instructed all the arrivals to go through the check-in process at the tables to participate in the caucus, as was required by the local election rules.

7

49. These arrivals, however, did not check in. Instead, they simply stood inside the entrance, ignoring Plaintiff O'Grady's instructions.

50. Within a few minutes, a transport van pulled up to the caucus venue.

51. Defendant-Senator Michael Hastings, an Illinois State Senator, got out of the van, accompanied by another group of individuals.

52. Among the individuals accompanying Defendant-Senator Hastings was someone who appeared to be a professional videographer.

53. Defendant-Senator Hastings was a well-known member of the OTU Party.

54. On information and belief, Defendant-Senator Hastings and other Defendants used government funds to carry out their misconduct, including the bus transport, videographer, and as-yet unknown expenses.

55. Also present outside the venue was a group of individuals who, like Defendant-Senator Hastings, were all members of the OTU Party: Defendant Murray, Richard E. Kelly, Tracy Maureen Sullivan, Antonio Rubino, Michael R. Schofield, Lena Matariyeh, Daniel Flores, Kelly Metzger, James L. Caliendo, Ana Kiss, Marco Gorajski, Adriano Martino, Ronald L. Cheatle, Michelle Martino, and Emmanuel "Manny" Buck. On information and belief, among these individuals were as-yet unnamed co-conspirators who agreed to assist and/or participate in the tortious conduct alleged against named Defendants.

56. A sub-group of these individuals—Kelly, Murray, Sullivan, Rubino, Schofield, Matariyeh, Flores, and  Metzger—comprised the rival OTU Party's slate of candidates for the April 2025 election ("OTU slate").

57. Kelly, Murray, Sullivan, Rubino, Schofield, Matariyeh, Flores, and Metzger remained outside the venue, where they intentionally caused confusion among arriving caucus-

goers. For example, when caucus-goers arrived and stated that they were there for the OTT caucus or "for Paul," a reference to Plaintiff Paul O'Grady, the OTU slate and individual Defendants fraudulently told caucus-goers that the event was actually *outside*, not inside the venue.

58.     Kelly, Murray, Sullivan, Rubino, Schofield, Matariyeh, Flores, and Metzger also presented these legitimate caucus-goers with sham affidavits in support of OTT in an attempt to aid Defendants in diverting them from participating in the legitimate caucus inside.

59.     Meanwhile, Defendant-Senator Hastings and other as-yet unnamed co-conspirators entered the facility, where Plaintiff O'Grady continued to encourage all arrivals, including Defendant-Senator Hastings, to go through the required check-in process.

60.     Defendant-Senator Hastings and his group refused to abide by Plaintiff O'Grady's requests.

61.     Defendant-Senator Hastings was openly using his title as Illinois State Senator and his status as a lawyer to guide the mob of people he had brought to the caucus, making statements such as "I'm their lawyer" in response to Plaintiffs' requests for them to register for the event before entering.

62.     By this point, the lobby had filled up with Defendant-Senator Hastings' mob, none of them willing to abide by the required registration process and blocking the entrance to the event.

63.     In response to Plaintiff O'Grady's requests to simply follow the rules, at one point Defendant-Senator Hastings moved toward the caucus room doors, and close to Plaintiff O'Grady's face said, "F*** you, I don't care."

64. At this escalation, Plaintiffs Odeh, Lynch, Maratea, Feldner, Fuesel, and Hawksworth then went to Plaintiff O'Grady's side, and began to back up, as Defendant-Senator Hastings and his mob pushed forward to gain entry, screaming threats in Plaintiffs' faces.

65. At some point during this physical altercation, Defendant-Senator Hastings left where the mob was gathered, in search of an alternative way to gain unauthorized access into the caucus room.

66. Defendant-Senator Hastings found a side entrance where he attempted to go into the caucus room.

67. At the same time, the mob moved closer to the double doors of the caucus room, in an attempt to physically get past Plaintiffs, who were blocking the entrance.

68. While outside the caucus room, Defendant-Senator Hastings made additional profane comments to Plaintiff O'Grady, including, "shut your f***ing mouth" and stating that he did not care about the check-in process.

69. After the aggressive escalation by the mob, and as this chaotic scene was unfolding, Orland Park Police arrived on the scene.

70. Defendant-Senator Hastings continued to verbally tout his status as a State Senator and a member of the Illinois bar to convince the police that he and his mob were legally permitted to enter the caucus room without complying with the required check-in process.

71. Defendant-Senator Hastings made statements to the police that he knew were false, including that Plaintiff O'Grady was legally barred from participating in the caucus.

72. Defendant-Senator Hastings also knowingly made false statements that *he* was the OTT Party Chairman, despite knowing that Plaintiff O'Grady was the OTT Party Chairman.

73.     Given that Defendant-Senator Hastings was an elected official, it was apparent that the police were hesitant to force a dispersal of his mob.

74.     Nevertheless, the police warned Defendant-Senator Hastings not to violate the law.

75.     Defendant-Senator Hastings also falsely told the Orland Park police that the OTT Party caucus was a government-sponsored event.

76.     The Orland Park police investigated this allegation by speaking to the owner of the venue, who informed them that Plaintiff O'Grady had, in fact, paid for and set up the political event himself. This confirmed that the caucus was not a government-sponsored event.

77.     Orland Park Police Officers then notified Defendant-Senator Hastings and his mob that they had to leave the venue.

78.     Nevertheless, Defendant-Senator Hastings and his mob were still largely blocking the entrance to the caucus venue from the inside and the outside, disregarding police orders, and preventing legitimate caucus-goers from entering.

79.     At around 6:00 pm, the time the caucus was set to begin, many of the senior citizens who regularly attended events hosted by Plaintiff O'Grady started to arrive at the congested venue.

80.     Defendant-Mayor Kyle Hastings, who had been the Mayor of Orland Hills for decades, pulled up in a marked Orland Hills police cruiser, accompanied by at least one as-yet unknown Village of Orland Hills uniformed police officer.

81.     This as-yet unknown Defendant Officer accompanying Defendant-Mayor Hastings lacked jurisdiction in Orland Park, where the venue was located.

82.     Defendant-Mayor Hastings had previously signed the petition in support of the opposing OTU party and was therefore legally barred from participating in the OTT caucus.

83.     Like Defendant-Senator Hastings, Defendant-Mayor Hastings attempted to enter the caucus room by force.

84.     Despite being legally barred from participating in the caucus, Defendant-Mayor Hastings tried to physically push past Plaintiff O'Grady in the same manner Defendant-Senator Hastings had done.

85.     Plaintiff O'Grady, Plaintiff Odeh, and Plaintiff Lynch, along with Plaintiff O'Grady's brother, locked arms in an attempt to prevent Defendant-Mayor Hastings and the Orland Hills police officer from physically overpowering the proceedings and entering the caucus room by force.

86.     Defendant-Mayor Hastings, within inches of Plaintiff O'Grady's face, used his cell phone to make a call on speaker to his son, Defendant-Senator Michael Hastings, displaying the phone to Plaintiff O'Grady to show Defendant-Senator Hastings' name.

87.     Defendant-Senator Michael Hastings also began yelling at Plaintiff O'Grady through the speaker.

88.     After Defendant-Mayor Hastings ended the call with Defendant-Senator Hastings, Defendant-Mayor Hastings continued to verbally berate Plaintiffs and attempt to physically force his way into the caucus room, still refusing to participate in the mandatory registration process.

89.     Only after Defendant-Mayor Hastings learned that Orland Park Police were about to reenter the building did he back away and leave the caucus room entrance.

90.     Given that the event was supposed to start at 6:00 pm, Plaintiffs had no choice but to begin caucus proceedings despite the unrest that Defendants and their as-yet unnamed co-conspirators were still causing inside and outside the venue.

91.     On information and belief, a group of individuals—Caliendo, Kiss, Gorajski, Adriano Martino, Cheatle, Michelle Martino, and Buck—had been enlisted by Defendant Senator Hastings, Defendant Mayor Hastings, and Defendant Trustee Hastings to pose as a fraudulent slate of OTT candidates ("fraudulent slate") despite having previously signed petitions to support the OTU Party. Among these individuals were as-yet unnamed co-conspirators who agreed to assist and/or participate in the tortious conduct alleged against named Defendants.

92.     Caliendo, Kiss, Gorajski, Adriano Martino, Cheatle, Michelle Martino, and Buck represented an attempt by the OTU, a rival political party, to hijack Plaintiffs' legal OTT Party slate.

93.     After finally heeding the police directive to leave the venue, Defendant-Senator Hastings joined as-yet unnamed co-conspirators in the parking lot and brought out a microphone and loudspeaker.

94.     Using the loudspeaker, some individuals, including Defendant-Senator Hastings, continued actively stirring confusion among the arriving citizens by declaring that the caucus was actually in the parking lot, again directing caucus-goers to sign sham affidavits pledging support for the fraudulent slate (Caliendo, Kiss, Gorajski, Adriano Martino, Cheatle, Michelle Martino, and Buck) while others continued to block the caucus venue entrance.

95.     On information and belief, many citizens who arrived to caucus for the legal OTT Party either left because they were unable to get into the venue due to Defendants' efforts to

13

block the entrance, or they were deceived by Defendants' scheme to sign sham affidavits in support of the fraudulent slate.

96.     Despite Defendants' mob action, aggressive tactics, and overt abuses of power, Plaintiffs were able to complete a caucus, though attendance was low and many caucus-goers never made it into the caucus site.

97.     Six days later, on December 9, 2024, Plaintiff O'Grady went to the Orland Township election office to file the caucus paperwork to enter the OTT Party slate in the consolidated election on April 1, 2025, in adherence to election laws.

98.     The paperwork reflected the results of the caucus: the legal nomination of the OTT Party candidates—Plaintiffs O'Grady, Odeh, Lynch, Feldner, Maratea, Fuesel, and Hawksworth.

99.     Plaintiff O'Grady then learned that earlier that morning, James L. Caliendo, a known member of the OTU Party, had claimed to be Chairman of the OTT Party and filed the fraudulent slate, which was posing as the OTT Party slate.

100.    On information and belief, Caliendo was able to file this fraudulent slate due to the misconduct Defendants committed on December 3, 2024.

101.    On information and belief, Defendant-Mayor Hastings' special assistant, who receives a government salary by the Village of Orland Hills, notarized both the fraudulent-slate Defendants' affidavits and the OTU-slate Defendants' affidavits.

102.    As a result of this fraudulent slate of OTT Party candidates filed by Caliendo, Plaintiffs—comprising the lawful slate of OTT candidates—were forced to file objections with the electoral board.

103.    An electoral board hearing was held on January 21, 2025.

14

104.    On January 30, 2025, the Honorable Judge Robert Bertucci, Honorable Judge James Carroll, and Honorable Laura Jacksack issued an order removing the fraudulent OTT slate of candidates from the April 1, 2025 consolidated election.

105.    The order found that the nomination papers filed by Caliendo were both "concerning and fraudulent."

106.    During the same time, Defendants Kelly and Flores filed an objection to the nominations of Plaintiffs, the legal slate of OTT candidates.

107.    This objection was summarily dismissed by the same electoral board.

108.    In the weeks following the above misconduct, Defendant-Senator Hastings knowingly made false comments to the media, including in a December 4, 2024 Chicago Tribune article in which Defendant-Senator Hastings stated that Plaintiff O'Grady had:

a.    been "circumventing the election law" in hosting the caucus;

b.    hosted a "public taxpayer event," referring to the caucus that Plaintiff O'Grady had personally paid for; and

c.    had "uninvited" Defendant-Senator Hastings and his mob to the caucus, despite Plaintiff O'Grady welcoming them to participate after completing the required check-in process.

109.    Following the mob action and aggression displayed by Defendants at the caucus, the disenfranchisement of citizens who were unable to caucus, months of costly legal battles, and a press smear campaign, Plaintiffs were finally permitted to participate in the April 2025 consolidated election.

110.    Although Plaintiff O'Grady won his election, Plaintiffs Odeh, Lynch, Maratea, Feldner, Fuesel, and Hawksworth did not prevail.

111.    On information and belief, many Orland Township citizens who intended to caucus for Plaintiffs never learned that they – the true OTT slate – were able to get onto the ballot for the consolidated April 2025 election.

**Plaintiffs' Damages**

112.    Plaintiffs have suffered mental, emotional, financial, and reputational damages, including but not limited to lost income, reputational damage, physical suffering, and emotional damages, all caused by Defendants' misconduct.

113.    Defendants' actions caused Plaintiffs to incur tens of thousands in additional legal expenses, which they would not have incurred otherwise.

114.    Defendant-Senator Hastings' public comments, at both the caucus site and in the media, have caused reputational harm, emotional distress, and physical distress to Plaintiff O'Grady by falsely accusing him of unethical conduct and spreading misinformation about Plaintiffs.

**COUNT I**
**42 U.S.C. § 1983 – First Amendment Retaliation**
**All Individual Defendants**

115.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

116.    The First Amendment to the United States Constitution protects the rights to free speech, assembly, association, and the petition of government for redress of grievances.

117.    As described in detail above, Defendants Senator Hastings, Mayor Hastings, Trustee Hastings, Murray, as-yet unknown Village of Orland Hills Police Officers, and as-yet unnamed co-conspirators, acting individually, jointly, and in conspiracy with one another, as well as under color of law, interfered with and retaliated against Plaintiffs' exercise of their constitutional rights under the First Amendment.

16

118.    Plaintiffs were engaging in constitutionally protected activities when they assembled to conduct a caucus for an upcoming election, in adherence with all applicable laws.

119.    Defendants used their authority to intentionally interfere with and otherwise thwart Plaintiffs' efforts to exercise their First Amendment rights in showing up to the caucus site, blocking the entrance, refusing to participate in the procedures, and using a variety of threats and intimidation to thwart the caucus.

120.    As described more fully above, as a result of Defendants' interference with the constitutionally protected activities of assembly, association, speech, and voting, Plaintiffs have suffered and are likely to suffer injuries, including but not limited to financial losses, harm to reputation, emotional distress, and physical distress.

121.    This Count is brought against all individually named Defendants, including Defendant-Senator Hastings in his individual capacity, Defendant-Mayor Hastings, Defendant-Trustee Hastings, as-yet unknown Village of Orland Hills Police Officer Defendants, Defendant Murray, and as-yet unnamed co-conspirators, in their individual and official capacities.

## COUNT II
### 42 U.S.C. § 1983 – Civil Conspiracy
### All Individual Defendants

122.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

123.    As described more fully above, Defendants Senator Hastings, Mayor Hastings, Trustee Hastings, Murray, as-yet unknown Officers of the Village of Orland Hills Police Department, and as-yet unnamed co-conspirators, engaged in an agreement for the purpose of depriving Plaintiffs, either directly or indirectly, of their rights secured by the First Amendment to the Constitution.

124.     Defendants engaged in a concerted effort to organize a mob for the purpose of disrupting and/or thwarting a lawfully sanctioned caucus in which Plaintiffs were engaging in constitutionally protected First Amendment activities.

125.     Each Defendant either held or holds an elected governmental position, politically consults and organizes with those Defendants, or was otherwise serving as an aid to the governmental officials engaging in the above-described misconduct and abuses of power.

126.     Defendants who held elected positions expressly and intentionally used their power and influence, by way of their titles and authority, to secure the voluntary agreement of the other Defendants to enter the conspiracy and take overt actions to advance the ends of the conspiracy, including but not limited to, intentionally interfering with Plaintiffs' lawful caucus, using physical and verbal intimidation to prevent free assembly, association, speech, and voting, which are constitutionally protected activities.

127.     Defendant-Senator Hastings, Defendant-Mayor Hastings, and Defendant-Trustee Hastings explicitly and implicitly used their authority and titles to further the conspiracy to violate Plaintiffs' rights.

128.     As described more fully above, as a result of Defendants' conspiracy, Plaintiffs have suffered and are likely to suffer injuries, including but not limited to financial losses, harm to reputation, emotional distress, and physical distress.

129.     This Count is brought against all individually named Defendants, including Defendant-Senator Hastings in his individual capacity; Defendant-Mayor Hastings, Defendant-Trustee Hastings, as-yet unknown Village of Orland Hills Police Officer Defendants, Defendant-Murray, and as-yet unnamed co-conspirators, in their individual and official capacities.

**COUNT III - 42 U.S.C. § 1983**
***Monell* Claim: Constitutional Violation by Final Policymaker, Defendant-Mayor Hastings
Against Defendant Village of Orland Hills**

130.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

131.    At all relevant times and for a period of time prior thereto, Defendant-Mayor
Hastings, as the President and Mayor of the Defendant Village of Orland Hills, was an individual
with final policymaking authority for the Village.

132.    Defendant-Mayor Hastings engaged in direct misconduct, both himself and
directing the misconduct of others, as described more fully above, that violated Plaintiffs' rights
under federal and Illinois law.

133.    As such, Defendant Village of Orland Hills is also liable, in that as a direct and
proximate result of the actions of final policymaker Defendant-Mayor Hastings, Plaintiffs'
constitutional rights were violated and they suffered injuries and damages, as set forth in this
Complaint.

134.    As a direct and proximate result of the unjustified and unreasonable misconduct
by final policymaker Defendant-Mayor Hastings, Plaintiffs suffered injuries, including but not
limited to financial losses, harm to reputation, and physical distress, as more fully alleged above.

135.    The Village of Orland Hills is therefore liable for the misconduct committed by
its final policymaker, Defendant-Mayor Hastings.

**COUNT IV**
**State Law Claim – Deprivation of Constitutional Rights (10 ILCS 5/29-17)**
**All Individual Defendants**

136.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

137.    As described in detail above, Defendants Senator Hastings, Mayor Hastings,
Trustee Hastings, Murray, as-yet unknown Officers of the Village of Orland Hills Police

Department, and as-yet unnamed co-conspirators subjected, or caused to be subjected, Plaintiffs—citizens of Illinois—deprivation of their rights, privileges, or immunities secured by the Constitution or laws of the United States or the State of Illinois, relating to the conduct of an election, voting, and/or the nomination or election of candidates for public or political party office.

138.    As described in detail above, Defendants' unconstitutional actions deprived Plaintiffs of the opportunity to freely assemble, associate, speak, and vote without restraint and/or to have the same influence as any other registered voters casting their votes in a legally sanctioned caucus.

139.    As described in detail above, Defendants entered into an agreement and worked together to aid them in their objective goals, which were to deprive Plaintiffs of their constitutional freedom to carry out election activities.

140.    Plaintiffs were injured and/or affected by Defendants by intentionally thwarting Plaintiffs' efforts to host a legal caucus, during which they were exercising constitutionally protected voting activities of assembly, speech, association, and voting.

141.    As described in detail above, as a result of the misconduct described in this Count, Plaintiffs suffered injuries, including but not limited to financial losses, harm to reputation, emotional distress, and physical distress, as more fully alleged above.

142.    This Count is brought against all individually named Defendants, including Defendant-Senator Hastings in his individual capacity; Defendant-Mayor Hastings, Defendant-Trustee Hastings, as-yet unknown Village of Orland Hills Police Officer Defendants, Defendant Murray, and as-yet unnamed co-conspirators, in their individual and official capacities.

20

**COUNT V**
**State Law Claim – Conspiracy to Prevent Voting (10 ILCS 5/29-18)**
**All Individual Defendants**

143.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

144.     As described more fully above, Defendants Senator Hastings, Mayor Hastings, Trustee Hastings, Murray, as-yet unknown Officers of the Village of Orland Hills Police Department, and as-yet unnamed co-conspirators, acting as co-conspirators, reached an understanding and/or agreement among themselves to accomplish an unlawful purpose by unlawful means, which was to deprive Plaintiffs of their constitutional rights under the First Amendment, namely, to interfere with a lawful caucus under Illinois election code.

145.     In furtherance of their conspiracy, each of these co-conspirators acted under the color of state law or as private actors in agreement or understanding with state actors and committed overt acts and were otherwise willful participants in joint activity.

146.     As described in detail above, as a result of the misconduct described in this Count, Plaintiff suffered injuries, including but not limited to financial losses, harm to reputation, and physical distress, as more fully alleged above.

147.     This Count is brought against all individually named Defendants, including Defendant-Senator Hastings in his individual capacity; Defendant-Mayor Hastings, Defendant-Trustee Hastings, as-yet unknown Village of Orland Hills Police Officer Defendants, Defendant Murray, and as-yet unnamed co-conspirators in their individual and official capacities.

**COUNT VI**
**State Law Claim – Defamation and Defamation *Per Se***
**Defendant-Senator Hastings**

148.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

149.    As described in detail above, Defendant-Senator Hastings made one or more false statements about Plaintiff O'Grady when he stated to the Chicago Tribune, as published in an article dated Dec. 4, 2024,  that Plaintiff O'Grady was "circumventing the election law" and hosting a "public taxpayer event" in which Defendant-Senator Hastings and his mob were "uninvited" to the caucus.

150.    Defendant-Senator Hastings made an unprivileged publication of the false statement(s) to third parties when he caused the statement to be published by way of news articles in the Chicago Tribune and other as-yet unknown publications.

151.    Defendant-Senator Hastings' defamatory statement(s) harmed Plaintiff O'Grady's reputation to the extent that it lowered Plaintiff O'Grady in the eyes of the community.

152.    Defendant-Senator Hastings' statement(s) was defamatory *per se* because its harm was obvious and apparent on its face.

153.    Defendant-Senator Hastings' statement(s) was defamatory *per se* because it imputed that Plaintiff O'Grady was unable to perform or lacked integrity to perform duties as a Supervisor of Orland Township by claiming that he was misusing taxpayer funds and attempting to prevent access to the caucus by voters.

154.    Defendant-Senator Hastings acted with malice in making the above defamatory statement(s) because he did so with knowledge that they were false.

155.    This Count is brought against Defendant-Senator Hastings in his individual capacity.

156.    As described in detail above, as a result of the misconduct described in this Count, Plaintiff suffered injuries, including but not limited to financial losses, harm to reputation, and physical distress, as more fully alleged above.

## COUNT VII
### State Law Claim – False Light
### Defendant-Senator Hastings

157.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

158.    Plaintiff O'Grady was placed in a false light before the public when Defendant-Senator Hastings falsely and inaccurately reported that Plaintiff O'Grady was "circumventing the election law" and hosting a "public taxpayer event" in which Defendant-Senator Hastings and his mob were "uninvited" by way of news articles in the Chicago Tribune and other as-yet-unknown publications, even though Defendant-Senator Hastings knew otherwise because Plaintiff O'Grady had followed local election laws in organizing the sanctioned caucus, paid for the event out of his own money and not taxpayer dollars, and welcomed Defendant-Senator Hastings and the mob to register for the event in order to attend, as is required by the rules.

159.    The false light in which Plaintiff O'Grady was placed by Defendant-Senator Hastings would be highly offensive to a reasonable person.

160.    Defendant-Senator Hastings acted with actual malice because he had knowledge that the statements he made that Plaintiff O'Grady was violating election laws and "uninviting" the mob were false.

161.    This Count is brought against Defendant-Senator Hastings in his individual capacity.

162.    As described in detail above, as a result of the misconduct described in this Count, Plaintiff suffered injuries, including but not limited to financial losses, harm to reputation, and physical distress, as more fully alleged above.

## COUNT VIII
## State Law Claim – Willful and Wanton Conduct
## All Individual Defendants

163.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

164.    At all times relevant to this Complaint, Defendants had a duty to refrain from willful and wanton conduct in connection with their duties as officials and citizens participating together in the political process.

165.    Notwithstanding that duty, the Defendants acted willfully and wantonly through a course of conduct that an actual or deliberate intention to cause harm or an utter indifference to, or conscious disregard for, Plaintiffs.

166.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered injuries, including but not limited to personal physical injury and emotional distress, as more fully alleged above.

## COUNT IX
## State Law Claim – Indemnification Pursuant to 745 ILCS 10/9-102
## Village of Orland Hills

167.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

168.    Defendant Village of Orland Hills is a local public entity under 745 ILCS 10/9-206.

169.    Defendant Village of Orland Hills was the employer of Defendant-Mayor Hastings, Defendant-Trustee Hastings, and as-yet unnamed co-conspirators, at certain times relevant and material to this Complaint.

170.    These Defendants committed the above-alleged unconstitutional violations under color of law and in the scope of their employment as employees of the Village of Orland Hills.

171.    Defendant Village of Orland Hills is therefore responsible for any judgment entered against Defendant-Mayor Hastings, Defendant-Trustee Hastings, and/or and as-yet unnamed co-conspirators, for acts committed by them during said employment with the Village, making the Village a necessary party to this Complaint.

<div align="center">

**COUNT X**
**State Law Claim – Indemnification Pursuant to 745 ILCS 10/9-102**
**Orland Township**

</div>

172.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

173.    Defendant Orland Township is a local public entity under 745 ILCS 10/9-206.

174.    Defendant Orland Township was the employer of Defendant Cindy M. Murray and as-yet unnamed co-conspirators at certain times relevant and material to this Complaint.

175.    These Defendants committed the above-alleged unconstitutional violations under color of law and in the scope of their employment as employees of Orland Township.

176.    Defendant Orland Township is therefore responsible for any judgment entered against Defendant Murray and as-yet unnamed co-conspirators for acts committed by them during said employment with the Township, making the Village a necessary party to this Complaint.

WHEREFORE, pursuant to federal and Illinois law, Plaintiffs PAUL O'GRADY, REEM ODEH, JOHN LYNCH, and PATRICK FELDNER, respectfully request that this Court enter a judgment in their favor and against Defendants MICHAEL E. HASTINGS, KYLE HASTINGS, KYLE HASTINGS II, as-yet unknown VILLAGE OF ORLAND HILLS POLICE OFFICERS, CINDY M. MURRAY, as-yet unnamed CO-CONSPIRATORS, and ORLAND TOWNSHIP awarding appropriate relief, compensatory damages, attorneys' fees, and costs against each

Defendant, punitive damages against each of the Individual Defendants, and any other relief that

this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs, PAUL O'GRADY, REEM ODEH, JOHN LYNCH, and PATRICK

FELDNER, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on

all issues so triable.

<div style="margin-left:50%">

Respectfully submitted,

PAUL O'GRADY
REEM ODEH
JOHN LYNCH
PATRICK FELDNER

BY:   /s/ Michael Kanovitz
*One of Plaintiff's Attorneys*

</div>

Michael Kanovitz
Jon Loevy
Kathryn Montenegro
LOEVY & LOEVY
311 N. Aberdeen Street Suite 3
Chicago, Illinois 60607
(312) 243-5900