**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL O'GRADY, REEM ODEH, JOHN LYNCH, and PATRICK FELDNER, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:25-cv-14656 |
| ILLINOIS STATE SENATOR MICHAEL E. HASTINGS, MAYOR KYLE R. HASTINGS, TRUSTEE KYLE HASTINGS II, AS-YET UNKNOWN OFFICERS OF THE VILLAGE OF ORLAND HILLS POLICE DEPARTMENT, CLERK CINDY M. MURRAY, AS-YET UNNAMED CO-CONSPIRATORS in their official capacities; the VILLAGE OF ORLAND HILLS, and ORLAND TOWNSHIP, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Judge Andrea R. Wood |
| Defendants. | ) ) | Jury Trial Demanded |

**ORLAND HILLS' DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**Overview, Summary of Complaint, and Summary of the Township Caucus
Nomination Process**

### A.      Identification of Orland Hills Defendants.

As stated in the Orland Hills Defendants' Motion to Dismiss, filed contemporaneously with this memorandum, Defendants  Kyle R. Hastings, Kyle Hastings II, the Village of Orland Hills, and to the extent necessary, the "Unknown Officers of the Village of Orland Hills Police Department" (the "Orland Hills Defendants") are moving to dismiss Plaintiffs' complaint as against them.

Plaintiffs' complaint at ECF # 1 identifies Defendant Michael Hastings as an Illinois State Senator and member of the "Orland Township United" Party ("OTU"). (ECF # 1 at ¶ 11); Defendant Kyle Hastings ("Hastings Senior") as the Mayor of the Village of Orland Hills and also a member of OTU (ECF # 1 at ¶ 12);  Kyle Hastings II ("Hastings Junior") as an Orland Hills Trustee and also a member of the OTU; and police officers whose involvement appears to have been limited to one of them driving Hastings Senior

to the caucus. (*see* ECF # 1 at ¶ 13 – "These 'Unknown Officers' accompanied Defendant-Mayor Hastings during the event that followed, including Defendant-Mayor Hastings' unconstitutional actions within the caucus venue").

### B. The Township Caucus Nomination Process.

Because this case focuses on the nomination of candidates for various Orland Township offices by way of the caucus process, an understanding of the relevant statutory procedures will aid the Court in its determination that the federal court claims do not allege any state action taken under color of law by any of the Orland Hills Defendants so as to confer federal jurisdiction on these counts. *See, e.g.*, *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 697 (7th Cir. 2017) ("Section 1983 addresses only *state* action.") (*emphasis in original*).

The nominating of candidates for Township offices by way of a party caucus is governed by Article 45 of the Illinois Township Code, 60 ILCS 1/45-5, *et seq.*, "Nominations By Political Parties." Under Section 45-10(a), a caucus "shall be held by the voters of each established political party in the Township" on the "first Tuesday in December preceding the date of the regular Township election." In connection with the April 2025 Township election, the caucus date was December 3, 2024.

Section 45-50, "Caucus Procedures," prescribes who may participate in a caucus (45-50(a) and establishes requisite rules of procedure, including such matters as permissible hours of caucus, duties of caucus judges, method of voting, and the like (Section 45-50(b).[1]

Of critical importance to this litigation is the fact that while the caucus procedures are "stringently regulated by state statute, and the cost of holding the caucus is borne by the Township government," the caucus itself is "an internal political party gathering," like a party convention or party slate-making proceeding. *Lenehan v. Township Officers Electoral Board of Schaumburg Township*, 2013 IL App. (1st) ¶ 45, 370 Ill. Dec. 647. In

---

[1] For an overview, see generally, "Nomination By Caucus," IICLE Election Law, Chapter 17.

fact, while caucuses are regulated by statute, "the statutes are clearly directory…not mandatory" and are in place only to ensure that a caucus upholds the "general purpose of election law[.]" *Ferguson v. Ryan*, 623 N.E.2d 1004, 1008 (Ill. App. 3d Dist. 1993); *see also People ex rel. DiFanis v. Barr,* 83 Ill.2d 191, 203, 46 Ill. Dec. 678 (1990) (Holding that a "true political caucus" does not involve public business for purposes of the Illinois Open Meetings Act).

###    C.    Allegations in the Complaint.

According to Plaintiffs' complaint, the individual Defendants, who are members of the OTU, took numerous actions to disrupt the December 3, 2024 caucus of the Orland Township Together Party ("OTT"), which was being held at a venue in neighboring Orland Park to nominate candidates for placement on the April 2025 ballot for election to various offices in Orland Township. (ECF # 1 at ¶¶ 22-79). As the complaint concedes, "the caucus was not a government-sponsored event." (ECF # 1 at ¶ 76). The allegations in the complaint focus primarily on the efforts of Michael Hastings, who at various points allegedly identified himself as a state senator and as the attorney for the OTU Party.

The complaint then focuses on the Orland Hills Defendants, alleging that a police officer drove Hastings Senior to the Orland Park caucus venue, where Hastings Senior "attempted to enter the caucus room by force," tried to "physically push past Plaintiff O'Grady," and "verbally berate[d] Plaintiffs and attempt[ed] to physically force his way into the caucus room," until he eventually backed away and left the caucus room entrance when he learned that the Orland Park police were about to re-enter the building. (ECF # 1 at ¶¶ 81-89). Ultimately, despite the Defendants' allegedly disruptive actions, the "Plaintiffs were able to complete a caucus" and proceed with the "lawful nomination" of their candidates. (ECF #1 at ¶¶ 96, 98).

The remaining allegations relate to election-based state court litigation which ultimately resulted in a "fraudulent slate of OTT Party candidates" being removed from the ballot. (ECF # 1 at ¶ 104) Ultimately, all of the Plaintiffs were able to stand for election

to the various offices for which they ran, but only Plaintiff O'Grady "won his election," while the other OTT candidates for Township office "did not prevail." (ECF # 1 at ¶ 110).

As a result of these allegations, Plaintiffs bring claims against all of the individual Defendants pursuant to §1983 for First Amendment Retaliation (Count I), alleging that Michael Hastings, Hastings Senior, Hastings Junior, Township employee Murray, Unknown Police Officers and others acted individually, jointly, in conspiracy "as well as under color of law," and "interfered with and retaliated against Plaintiffs' exercise of their constitutional rights under the First Amendment." (ECF # 1 at ¶¶ 115-117). Paragraph 119 further alleges that these Defendants "used their authority" to interfere with Plaintiffs' "First Amendment rights" by attending the caucus, "blocking the entrance, refusing to participate in the procedures, and using a variety of threats and intimidation to thwart the caucus." (ECF # 1 at ¶ 119).

Plaintiffs also bring a §1983 claim for Civil Conspiracy against the individual Defendants (Count II) making the same allegations as Count I and further alleging that these Defendants were involved in politics and used their positions of political "power and influence by way of their titles and authority" to further the conspiracy. Plaintiffs also bring a *Monell* claim against the Village of Orland Hills for the claimed misconduct of "its final policymaker – Defendant Mayor Hastings." (Count III). Count IV through Count VIII are state law claims. Counts IX and X are non-substantive state law indemnification claims.

All of Plaintiffs' claims against the Orland Hills Defendants should be dismissed for the reasons discussed below.

## LEGAL STANDARD FOR MOTION TO DISMISS

The well-pleaded allegations in the complaint are taken as true, and all reasonable inferences from those allegations are construed in a light most favorable to the non-moving party when deciding a Rule 12(b)(6) motion. *Ray v. City of Chicago*, 629 F.3d 660, 662-663 (7th Cir. 2011). To survive a Rule 12(b)(6) motion to dismiss, the complaint

must describe the claim in sufficient and concise detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests" and the allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Bare assertions show only the possibility, not the plausibility, of a complainant's right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere labels, titles, and formulaic recitations of elements do not state a cause of action. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Legal conclusions and conclusory statements found in the complaint are to be ignored. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## ARGUMENT

### A.    The Federal Claims Should Be Dismissed For Failure To Satisfy The State Action – Color of Law Requirement.

Accepting the facts as true for 12(b)(6) purposes, the complaint tells a dense and vivid story about two warring political factions seeking to win the 2025 Orland Township election. The complaint is filled with allegations of tough, bare knuckles, in-your-face politics between the two factions. But this is a story which may only be told in state court, because the federal counts fail to satisfy the state action/color of law requirement necessary to establish jurisdiction under 42 U.S.C. § 1983.

Section 1983 authorizes a federal claim against persons who "under color of any statute, ordinance, regulation, custom, or usage of any state," violate another's federal civil rights. Section 1983 operates only against governmental actors who misuse the power they have under state or local law.  *American Manufacturer's Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color of state-law element of Section 1983 excludes from its reach merely private conduct no matter how discriminatory or wrongful") [cleaned-up].

This limitation is applicable in the context of First Amendment claims. The First Amendment "prohibits only *governmental* abridgement of speech" and not "*private* abridgement of speech." *Manhattan Community Access Corporation v. Halleck*, 587 U.S. 802, 808, 139 S. Ct. 1921 (2019) [Court's emphasis]. Section 1983 does not cover actions of state or local officials "in the ambit of their personal pursuits." *Screws v. United States*, 325 U.S. 91, 111, 65 S. Ct. 1031 (1945) (plurality opinion); *Coles v. City of Chicago*, 361 F. Supp.2d 740, 748 (N.D. Ill. 2005).

The threshold question in this case for this Court's resolution is whether the Orland Hills Defendants, who are repeatedly identified in conclusory fashion as either state or local officials, were either (i) engaged in the requisite state action, or (ii) acting as private citizens during the caucus. The Supreme Court's most recent analysis of this issue, *Lindke v. Freed*, 601 U.S. 187, 144 S. Ct. 756 (2024), provides the answer. The Court's extensive analysis is particularly relevant and provides this Court with a roadmap to the dismissal of the federal law counts against the Orland Hills Defendants.

*Lindke* dealt with the issue of when a city manager's social media use constituted state action. The Court first reiterated by way of background that Section 1983 "protects against acts attributable to a state, not those of a private person."[2] The Court then surveyed the law. A particular act "is not attributable to a state unless it is traceable to the state's power or authority. Private action – no matter how 'official' it looks – lacks the necessary lineage." *Id.* at 767.

The state action requirement means that the defendant must "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* [cleaned up]. When "the challenged conduct entails functions and obligations in no way dependent on state authority, state action does not exist." *Id.* at 198-199.

---

[2] Municipalities are considered arms of the state for purposes of Section 1983. *Lindke, supra* at nt. 1 ("Because local governments are subdivisions of the state, actions taken under color of a local government's law, custom, or usage count as 'state' action for purposes of Section 1983").

Gathering these authorities, the Court concluded that a local official's social media activity constitutes state action only if the official "(1) possessed actual authority to speak on the state's behalf; and (2) purported to exercise that authority when he spoke on social media." *Id.* at 766. The Court reemphasized the two-part test at the Opinion's concluding paragraph. 601 U.S. at 204.

Accordingly, the question of law on the federal claims is whether any of the Defendants had actual authority to speak and act on behalf of the State of Illinois (in the case of Michael Hastings) or the Village of Orland Hills (in the case of Hastings Senior and Junior) in connection with the actions they took at the Township caucus, and, second, whether they purported to exercise that authority during the caucus. Both elements must be present.

The federal claims fail under both prongs of the *Lindke* test. While the complaint makes multiple references to the Hastings family holding public offices, there are no allegations that any of them used any authority connected with their public offices during the course of the caucus. In particular:

**Michael Hastings.** Michael is a member of a state legislative body – the Illinois State Senate. It is difficult to even conceive what possible legislative authority one member of the Illinois General Assembly could have utilized during the caucus. The complaint provides no clue.

In fact, paragraphs 61 and 70 allege that Hastings identified himself as an attorney for the group. Accordingly, there are no allegations of state action or that Michael Hastings took any action under color of state law.

**Hastings Senior and Hastings Junior.** Hastings Senior and Hastings Junior are both local municipal officials, Village Mayor and Village Trustee, respectively. However, the complaint makes no allegations that either of these Defendants had actual authority to speak on behalf of the Village of Orland Hills during the caucus or that they purported to exercise any municipal authority during the caucus.

In their complaint, Plaintiffs outline Senior Hastings's alleged actions during the caucus, which include allegedly attempting to enter the caucus room despite being legally and physically barred from doing so and verbally berating Plaintiff O'Grady in the process. (ECF # 1 at ¶¶ 83, 84, 88). The complaint also alleges that Hastings Senior , along with Hastings Junior,  organized a group of people to stand outside the caucus in an attempt to confuse caucus-goers and prevent them from going inside.[3] (ECF # 1 at ¶ 91). While Plaintiffs may not have liked or approved of these actions, there is nothing in the complaint to indicate any of these actions were taken with actual or purported municipal authority.

To illustrate this point and the distinction in *Lindke*, let's assume the caucus took place in Orland <u>Hills</u>, and either Hastings Senior or Hastings Junior ordered Plaintiffs to be arrested by Orland Hills police, and then had them taken to the Orland Hills police station during the course of the caucus. Those would have been actions taken under color of law satisfying the state action test, because they were actions taken by government officials using their state law government authority.  Had Hastings Senior and Junior used their Orland Hills authority to arrest-and-remove Plaintiffs in order to retaliate against Plaintiffs for their First Amendment activity, then there might also be a viable Section 1983 claim.

But the caucus took place in Orland <u>Park</u>, not Orland <u>Hills</u>. Elected municipal officials from Orland Hills have no more authority in Orland Park than would the Mayor of Paducah, Kentucky have over Orland Hills. The complaint makes no allegations to the contrary and instead contains only allegations of actions that Hastings Junior and Hastings Senior took to further their own personal goals in an election, which is decidedly not state action.

**The Unknown Orland Hills Police Officers.**   There are no allegations that the unknown Orland Hills police officers took any action against the Plaintiffs utilizing

---

[3] The complaint alleges no personal actions by Kyle Hastings II aside from his alleged role organizing this group.

their position as police officers. There are no allegations they arrested anybody or used any force against anybody. The complaint alleges only that they drove Hastings Senior to the caucus. Whether a mayor having local police officers drive him somewhere for a "political" event constitutes an appropriate or improper use of these public employees is a matter of state or local law. The answer to that question has nothing to do with any purported violation of Plaintiffs' civil rights.

### B.    The Complaint Fails Under Lindke And Post-*Lindke* Case Law.

To be sure, the complaint is replete with references of both Michael Hastings and the Orland Hills Defendants abusing their "authority" as elected officials. But those conclusory allegations fail to connect Defendants' challenged actions to their particular governmental offices or the performance of specific duties relating to those offices. Plaintiffs' reliance on this "political power" approach ignores the Supreme Court's admonition that the "distinction between private conduct and state action turns on substance, not labels." *Lindke*, 601 U.S. at 197. Absent this specific connection, the complaint's allegations lack the "necessary lineage" to satisfy the state action requirement. *Lindke* at 198 ("An act is not attributable to a state unless it is traceable to the state's power or authority. Private action – no matter how 'official' it is – lacks the necessary lineage").

This principle is illustrated in *Mackey v. Rising*, 106 F.4th 552 (6th Cir. 2024), an on-point  decision applying *Lindke*. In *Mackey*, Plaintiff brought a Section 1983 claim against a city commissioner after that commissioner telephoned Plaintiff and threatened to physically "hurt him if he did not remove a social media post." *Id*. at 554-555. The Court found there was no state action because the commissioner's municipality "did not give Rising the authority to engage in the conduct that Mackey challenges in this suit." *Id*. at 561. Nor did the plaintiff identify any "legislative power that Rising's alleged threat could conceivably fall under." Critically, Mackey conceded "that Rising threatened only *physical* harm, not the types of harm that legislators might inflict." *Id*. at 562.

9

This reasoning is particularly applicable to the present case. Plaintiffs make no allegations that either the Illinois General Assembly or the laws of the Village of Orland Hills give any of these individual Defendants "the authority to engage in the conduct" at the Orland Township caucus which Plaintiffs are now challenging. Nor do they allege these legislators threatened Plaintiffs with the adoption of any harmful legislation in retaliation for any First Amendment activity.[4] Absent any viable state action allegations, the federal claims against the Orland Hills defendants cannot move forward.

### C. The Conspiracy Allegations Do Not Change The Analysis.

This failure to allege state action cannot be salvaged by couching the federal claims as Section 1983 conspiracies. In order to establish a Section 1983 conspiracy, a plaintiff "must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of a conspiracy by a party. *Johnson v. City of Reading, Pennsylvania*, 2025 WL 3565686 (E.D. Pa. 2025) at *9; *Costa v. Ramaiah*, 689 F. Supp.3d 553, 584 (N.D. Ill. 2023) (state action doctrine requires that one of the defendants must have acted under color of law, which, in turn, means Section 1983 does not permit suits based on private conduct "no matter how discriminatory or wrongful"). *Id*. at 584 [Cleaned up]. No state action means no Section 1983 conspiracy.

### D. Conclusion On The State Action Issue.

Accordingly, the federal claims against the individual Orland Hills Defendants must be dismissed for failure to satisfy the state action requirement. The *Lindke* test carefully recognizes the principle that, while "public officials can act on behalf of the State, they are also private citizens with their own constitutional rights." 601 U.S. at 196. This Court's application of this principle in the present case will serve to "protect a robust

---

[4] As local legislators, Hastings Senior and Hastings Junior lack any legal authority to legislate regarding another unit of government. *Village of Orland Hills v. Citizens Utilities Company of Illinois*, 347 Ill.App.3d 504, 518, 282 Ill. Dec. 966, 977-8 (1st Dist. 2004) ("Since municipalities are creatures of statute, they have no jurisdiction beyond their corporate boundaries unless that jurisdiction is conferred by legislature"). [Cleaned-up].

sphere of individual liberty for those who serve as public officials or employees." *Id.* [Cleaned up].

An application of this important principle is appropriate in this case. While these defendants are elected officials who allegedly pushed their political weight at the Orland Township political caucus (Flexing their political "clout," using Chicago jargon), they were acting as citizens at the caucus, even if their private actions crossed the line of fair advocacy. *Id.* at 196.

Because the complaint fails to allege that these Defendants took any action which was "actually part of the job" that the Illinois General Assembly or the ordinances of Orland Hills conferred upon them, Plaintiffs "cannot make this threshold showing of authority," and, therefore "cannot establish state action." *Id.* at 201. The federal claims against the individual Defendants should accordingly be dismissed.

### E.    Assuming This Court Dismisses The Individual Federal Claims, *Monell* Count <u>III</u> Must Necessarily Be Dismissed.

Assuming this Court dismisses the federal claims against the individual Defendants, that dismissal compels the dismissal of the *Monell* claim against the Village of Orland Hills. *Brown v. Polk County*, 965 F.3d 534, 541 (7th Cir. 2020) ("[T]here was no constitutional violation. That finding defeats the *Monell* claim too"); *Turner v. City of Champaign*, 979 F.3d 563, 571 (7th Cir. 2020).

### F.    Assuming Dismissal of The Federal Claims, The Court Should Dismiss The State Law Claims.

Assuming this Court dismisses the federal claims, then the Court should dismiss the various state law claims in accordance with the prevailing Seventh Circuit practice. *Coleman v. City of Peoria*, 925 F.3d 336, 352 (7th Cir. 2019) ("Absent unusual circumstances, district courts relinquish supplemental jurisdiction over pendent state law claims if all claims within the court's original jurisdiction have been resolved before trial").

## CONCLUSION

It "is not a government duty to *run* for office," and "running for office — and dirty tricks in connection with running for office . . . is not state action." *Krupa v. Quinn*, 596 F. Supp. 3d 1127, 1138 (N.D. Ill. 2022) (*emphasis in original*). The Seventh Circuit's emphasis in the class-of-one context is applicable to this case:

> Politics is a rough-and-tumble game where hurt feelings and thwarted ambitions are a necessary part of robust debate . . . It is impossible to imagine the judiciary attempting to decide when a politically retaliatory step goes "too far" without displacing the people's right to govern their own affairs and making their judiciary just another political tool for one faction to wield against its rivals.

*Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 939 (7th Cir. 2018).

Insofar as the federal constitutional claims are concerned, the "price of political dirty tricks must be collected at the ballot box rather than at the courthouse." *Id*. at 940.

Respectfully submitted,

**Village of Orland Hills, Mayor Kyle Hastings, and Trustee Kyle Hastings II**

By:     /s/ John B. Murphey
          John B. Murphey, Attorney

Burton S. Odelson (2090457)
John B. Murphey (1992635)
Kelly A. Krauchun (6322639)
Odelson, Murphey, Frazier & McGrath, Ltd.
3318 West 95th Street
Evergreen Park, Illinois 60805
Tel: 708.424.5678
attyburt@omfmlaw.com
jmurphey@omfmlaw.com
kkrauchun@omfmlaw.com

*s/Lance E. Neyland*
Lance E. Neyland (6331171)
*For the Village of Orland Hills*
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Tel: 847.291.0200
lneyland@ifmklaw.com