**Case No. 1:25-cv-14656**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

PAUL O'GRADY, REEM ODEH, JOHN LYNCH, and PATRICK FELDNER,

*Plaintiffs,*

v.

ILLINOIS STATE SENATOR MICHAEL E. HASTINGS, MAYOR KYLE E. HASTINGS, TRUSTEE KYLE HASTINGS II, AS-YET UNKNOWN OFFICERS OF THE VILLAGE OF ORLAND HILLS POLICE DEPARTMENT, CLERK CINDY M. MURRAY, AS-YET UNNAMED CO-CONSPIRATORS in their official capacities, THE VILLAGE OF ORLAND HILLS, and ORLAND TOWNSHIP,

*Defendants.*

**SENATOR MICHAEL E. HASTINGS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

Honorable Andrea R. Wood

Respectfully submitted,

Ryan B. Jacobson, Esq. (ARDC No. 6269994)
Danessa P. Watkins, Esq. (ARDC No. 6314234)
AMUNDSEN DAVIS, LLC
150 North Michigan Avenue, Suite #3300
Chicago, Illinois 60601
Phone: (312) 894-3252
rjacobson@amundsendavislaw.com
dwatkins@amundsendavislaw.com

*Counsel for Defendant, Senator Michael E. Hastings*

This matter does not present a genuine legal dispute, but rather reflects a case of sour grapes. All but one of the named Plaintiffs participated in and lost a township election, and Plaintiffs now attempt to convert an electoral defeat into tort liability. However, federal courts exist to adjudicate legal claims, not to serve as instruments for post-election retaliation or media-driven campaigns aimed at silencing protected political speech. As the Seventh Circuit has reflected:

> Politics is a rough-and-tumble game, where hurt feelings and thwarted ambitions are a necessary part of robust debate. It is impossible to imagine the judiciary attempting to decide when a politically retaliatory step goes "too far" without displacing the people's right to govern their own affairs and making the judiciary just another political tool for one faction to wield against its rivals.

*Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 939 (7th Cir. 2018) (internal citation omitted). At bottom, "[v]oters rather than judges must decide when one side has gone overboard," because recruiting the federal judiciary as a referee would do far more harm than good. *Gonzales v. Madigan*, 990 F.3d 561, 564 (7th Cir. 2021). As detailed below, not one cause pled against Senator Michael E. Hastings ("Sen. Hastings") sets forth a legally plausible claim. No amount of amendment to the pleading could alter the underlying facts and circumstances. Accordingly, dismissal with prejudice is warranted.

## COMPLAINT ALLEGATIONS

As alleged, the individually named parties to this action are opponents in local township politics. Complaint ¶ 22 (Dkt. #1) ("Compl."). Plaintiffs, Paul O'Grady ("O'Grady"), Reem Odeh, John Lynch, and Patrick Feldner, are all members of the Orland Township Together Party ("OTT"), for which O'Grady serves as Chairman. *Id.* at ¶¶ 7-10, 22. Defendants include: Sen. Hastings, an Illinois State Senator; Kyle R. Hastings, Mayor of the Village of Orland Hills; Kyle Hastings II, Trustee of the Village of Orland Hills; Cindy M. Murray, Clerk of Orland Township; Village of Orland Hills; Orland Township; unknown Police Officers of the Village; and unnamed co-conspirators. *Id.* at ¶¶ 11-18. All individually named Defendants are sued in their individual and official capacities and are allegedly members of the Orland Township United Party ("OTU"). *Id.* at ¶¶ 11-16, 19.

1

On December 3, 2024, the OTT Party hosted a caucus at a banquet hall in Orland Park to nominate candidates for the April 2025 Orland Township election. *Id.* at ¶¶ 23-25. The caucus was being held because the OTT Party missed the August deadline to slate electors by petition, thereby precluding them from running as an established party in the February primary. *Id.* at ¶¶ 26, 28. The caucus provided an alternative option for the OTT Party to enter its candidates. *Id.* at ¶¶ 30-31. The OTT Party notified the Orland Township Clerk of its intent to caucus by written notification and publication in the press. *Id.* at ¶ 33. As O'Grady used personal and campaign funds to rent the venue, Plaintiffs maintain the caucus was not a government-sponsored event. *Id.* at ¶¶ 25, 76.

The Complaint details the manner in which the Defendants purportedly disrupted the caucus proceedings.[1] As is relevant to the instant motion, Sen. Hastings allegedly: attempted to enter the venue and refused to follow the check-in process, *id.* at ¶¶ 59-60, 66; used his title as a senator and lawyer to guide a mob of people into the lobby and announced he was their lawyer when Plaintiffs tried to make them register, *id.* at ¶¶ 61-62; used a harsh tone and foul language when speaking to O'Grady and tried to physically gain entry to the venue, *id.* at ¶¶ 63-64, 68, 87; tried to convince Orland Park Police that had arrived on scene that he was legally permitted to enter the caucus, *id.* at ¶ 70; for a period of time, largely blocked the entrance to the venue and disregarded police orders to leave, *id.* at ¶¶ 77-78, 93; and caused confusion outside the venue by declaring that the caucus was being held in the parking lot and directing people to pledge support for a "fraudulent slate" of rival candidates, *id.* at ¶¶ 93-94. Despite the disruption, Plaintiffs completed a caucus on December 3, 2024. *Id.* at ¶ 96.

On December 4, 2024, the Chicago Tribune published an article that included Sen. Hastings' allegedly false and defamatory comments that O'Grady had been "circumventing the election law," hosted a "public taxpayer event," and had "uninvited" Sen. Hastings and his mob to such caucus

---

[1] Count II is the only pled conspiracy claim, and it is brought under § 1983. Although Plaintiffs consolidate their other claims against each Defendant under singular Counts, Sen. Hastings can only be liable for his personal conduct.

event. *Id.* at ¶¶ 108, 149, 158; *see also,* M. Nolan, Orland Park police disperse crowd at Orland Township caucus, Chicago Tribune, Dec. 4, 2024 (**Exhibit 1**).[2]

On December 9, 2024, O'Grady filed the requisite paperwork to enter the OTT Party slate in the consolidated election. Compl. ¶¶ 97-98. Plaintiffs then filed objections with the electoral board to dispute the "fraudulent slate" posing as OTT Party candidates that was filed by a third-party. *Id.* at ¶¶ 99, 102. Plaintiffs prevailed in the hearing and were permitted to participate in the April 2025 election. *Id.* at ¶¶ 103-07, 109. O'Grady won his election, and the other Plaintiffs did not. *Id.* at ¶ 110.

Plaintiffs seek recovery for alleged mental, emotional, and reputational damages, as well as financial harm, lost income, and legal expenses. *Id.* at ¶¶ 112-14. As against Sen. Hastings, Plaintiffs attempt to plead: First Amendment Retaliation, 42 U.S.C. § 1983 (Count I); Civil Conspiracy, 42 U.S.C. § 1983 (Count II); Deprivation of State Constitutional Rights, 10 ILCS 5/29-17 (Count IV); Conspiracy to Prevent Voting, 10 ILCS 5/29-18 (Count V); Defamation and Defamation *Per Se* (Count VI); False Light (Count VII); and Willful and Wanton Conduct (Count VIII). Each of these claims is subject to dismissal with prejudice under Rule 12(b)(6) for the reasons argued below.

## LEGAL STANDARD

A complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). While the Court is to "accept all well-pleaded allegations of fact as true . . . [l]egal conclusions do not get the same benefit" and may be disregarded. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir.

---

[2] This article is also available online at https://www.chicagotribune.com/2024/12/04/orland-park-police-called-to-disperse-crowd-at-orland-township-political-caucus/. *See infra* at Legal Argument § III discussing the incorporation-by-reference doctrine that allows for consideration of **Exhibit 1** on a Rule 12(b)(6) motion.

3

2019). The plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Otherwise, dismissal is required and may be entered with prejudice where the claims "do not appear to be fixable via amended allegations." *Evanger's Cat & Dog Food Co. v. Thixton*, 412 F. Supp. 3d 889, 906 (N.D. Ill. 2019); Fed. R. Civ. P. 12(b)(6).

## LEGAL ANALYSIS

### I. PLAINTIFFS CANNOT SUSTAIN THEIR CLAIMS UNDER § 1983

"To state a valid cause of action under § 1983, a plaintiff must demonstrate that: (1) the defendant(s) deprived him of a right secured by the Constitution or any law of the United States; and (2) the deprivation of that right resulted from the defendant(s) acting under color of law." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). Here, Plaintiffs allege Sen. Hastings is liable for First Amendment Retaliation under § 1983 because he used his authority as a state senator to interfere, and/or conspired with Defendants to interfere, with Plaintiffs' protected activities of assembly, association, speech, and voting at the township caucus. Compl. ¶¶ 1-3, 11, 118-20, 123-27. Each argument raised below provides an independent basis for dismissal *with prejudice* of Counts I and II.

### A. Sen. Hastings Was Not Acting Under Color Of Law.

"As [the] text [of § 1983] makes clear, this provision protects against acts attributable to a State, not those of a private person." *Lindke v. Freed*, 601 U.S. 187, 194 (2024). It is not enough that a defendant is a public official or employee because the "distinction between private conduct and state action turns on substance, not labels." *Id.* at 197. "To plead that a defendant acted under color of state law, a § 1983 plaintiff must allege that a defendant's invocation of state authority in one way or another facilitated or enabled the alleged misconduct." *Krupa v. Quinn*, 596 F. Supp. 3d 1127, 1137 (N.D. Ill. 2022) (quoting *DiDonato v. Panatera*, 24 F.4th 1156, 1161 (7th Cir. 2022)). Put another way, "state action exists only when 'the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority.'" *Lindke*, 601 U.S. at 198 (quoting *Lugar v. Edmondson Oil Co., Inc.*,

4

457 U.S. 922, 939 (1982)). State action will only be found where the defendant-official: (1) possessed actual state authority to engage in the complained-of conduct, and (2) purported to exercise such authority when he acted. *Lindke*, 601 U.S. at 198. Three comparable cases are worth consideration.

First, in *Lindke,* the plaintiff sued the city manager for deleting plaintiff's comments and eventually blocking him from commenting on defendant's public Facebook page. *Id.* at 193. Although the city manager's "Facebook page looks and functions like an outlet for city updates and citizen concerns," the Court found, "the presence of state authority must be real, not a mirage." *Id.* at 199. Without proof that defendant had "actual authority rooted in written law or longstanding custom to speak for the State," *and* that such authority "extend[ed] to speech of the sort that caused the alleged rights deprivation," plaintiff could not meet prong 1 of the test. *Id.* at 201. As for prong 2, the Court confirmed that plaintiff could only prevail if defendant was speaking in furtherance of his official responsibilities -- that is, "speaking 'in his official capacity or' . . . us[ing] his speech to fulfill 'his responsibilities pursuant to state law.'" *Id.* (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988)).

The *Lindke* analysis was applied by the Sixth Circuit in *Mackey v. Rising*, where the plaintiff criticized local politicians online, including accusing the defendant-city commissioner of illegal drug use. 106 F.4th 552, 556 (6th Cir. 2024). The defendant allegedly threatened physical violence if plaintiff did not delete his comments. *Id.* at 556-57. Plaintiff brought a § 1983 claim for First Amendment retaliation by a city official for plaintiff's political speech. *Id.* at 557. Applying *Lindke*, the Court found the city had not cloaked its city commissioner with authority to engage in the complained-of conduct: threatening physical violence. *Id.* at 561-62 (finding, "[u]nlike police officers, legislators generally lack the power to wield the State's monopoly on the use of force"). While the defendant had the power to perform legislative tasks (with the requisite quorum) and *some* authority to speak to residents (about legislation), defendant could not "conjure the power of the State through his own efforts." *Id.* at 562-63. Plaintiff's § 1983 action was without merit as plaintiff could not identify some "statute, ordinance,

5

regulation, custom, or usage" giving defendant the authority to use or threaten physical force on behalf of the city. *Id.* at 563-64.

Finally, in *Wilson v. Price*, a § 1983 action was dismissed against an alderman who physically assaulted an auto mechanic who refused to move illegally parked cars in front of his business. 624 F.3d 389, 390 (7th Cir. 2010). Though a pre-*Lindke* decision, the Seventh Circuit utilized a similar analysis in determining that the defendant did not act under color of law because "one cannot misuse power one does not possess." *Id.* at 393 (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1518 (7th Cir. 1990)). In assessing the specific conduct at issue, the Court found:

> even assuming that he was at Midnight Auto in a capacity legitimately related to his role as legislator, it is indisputable that Price crossed that line and entered the realm of law enforcement--which is wholly unrelated to the duties of a legislator--the moment he demanded that Wilson move the cars. . . . Price's presence at Midnight Auto may have been related to his aldermanic duties in that he was responding to constituent complaints, but even Price does not dispute that his authority to act was limited to enacting legislation in response to those complaints. It is clear that taking such executive action was outside the scope of Price's aldermanic grant of authority.

*Id.* at 393. Thus, the Court concluded, "[w]hen officials possess no authority to act, . . . their conduct is outside the ambit of § 1983." *Id.*

As alleged in the present Complaint, Sen. Hastings interfered with Plaintiffs' First Amendment rights on December 3, 2024, by "showing up to the caucus site, blocking the entrance, refusing to participate in the procedures, and using a variety of threats and intimidation to thwart the caucus." Compl. ¶¶ 1-3, 119. The application of the above-stated law to the facts before this Court can produce only one outcome: Plaintiffs have not and cannot point to any authority that cloaked Sen. Hastings with the power to engage in the complained-of conduct on behalf of the State, nor did Sen. Hastings purport to exercise his authority as a State legislator when engaging in such conduct. *Lindke*, 601 U.S. at 198. Even under deferential notice pleading standards, Plaintiffs' conclusory allegations that Sen. Hastings' acted "under color of law" are insufficient. *Wilson,* 624 F.3d at 393.

6

### 1. The Complaint Offers No State Authority For Sen. Hastings' Alleged Actions.

As to prong 1, the relevant question is whether Sen. Hastings possessed *actual authority* to speak and act on behalf of the State of Illinois at the Orland Township caucus. *Lindke*, 601 U.S. at 198. Plaintiffs fail to plead facts on this element. Undisputedly, the subject caucus was governed by the Illinois Township Code, which allocates authority over notice and location in the township board, see 60 ILCS 1/45-10(b), and vests authority over the conduct of the caucus in the participants themselves, *see* 60 ILCS 1/45-15. The statute leaves no residual authority for state legislators and does not contemplate supervision, enforcement, regulation, or intervention by the General Assembly. The omission should be considered intentional, as township caucuses are local political processes, not legislative functions. *See Segneri v. Ruhl*, 2021 IL App (2d) 210036, ¶ 24 ("The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning").

The Illinois Election Code reinforces the same conclusion. It governs elections administered by election authorities, defined as "the county clerk or board of election commissioners." 10 ILCS 5/1-3(6). Township caucuses are not administered by election authorities and are not state run elections. Nothing in the Election Code grants state legislators -- like Sen. Hastings -- authority to regulate caucus proceedings, control access, or enforce compliance. Plaintiffs also fail to point to any authority under which the State authorized Sen. Hastings to refuse to follow caucus check-in procedures, physically push his way into a township caucus, and divert would-be participants to a "sham" caucus. *See* Compl. ¶¶ 59-60, 64, 93-94. Where state law affirmatively assigns authority elsewhere, a legislator's conduct, no matter how visible or controversial, remains private activity outside the purview of § 1983. *See Wilson,* 624 F.3d at 393.

### 2. Sen. Hastings Did Not Purport To Invoke His Powers As A Senator.

For prong 2, Plaintiffs must plead facts supporting a finding that Sen. Hastings purported to exercise his authority on behalf of the State during the subject caucus. *Lindke*, 601 U.S. at 198. Again,

the Complaint falls short. Plaintiffs claim that Sen. Hastings announced that he was a State Senator and a lawyer to guide "his mob" into the caucus and to convince police that he and "his mob" were legally permitted to enter the caucus without checking in. Compl. ¶¶ 61, 70. "But the mere assertion that one is a state officer does not necessarily mean that one is acting under color of state law." *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976) (rejecting § 1983 liability for a state law enforcement officer who flashed his *state*-issued badge in a show of authority while he was actually acting pursuant to *federal* authority). Nor does the law allow for § 1983 redress against "an official who possessed *absolutely no authority* to act but nonetheless assumed the position of an imposter in pretending that he did." *Gibson*, 910 F.2d at 1518; *see, e.g., Reardon v. Danley*, 2022 WL 3227005, 2022 U.S. Dist. LEXIS 144883, *47-53 (N.D. Ill. Jul. 6, 2022) (finding a county board member's removal of campaign signs from private property was not an interference with First Amendment rights under § 1983, as Illinois law does not delegate authority to engage in such conduct to county board officials).

Sen. Hastings must have been engaged in conduct that is in some way related to his duties as a state legislator--a connection Plaintiffs do not even attempt to make. *See Mackey*, 106 F.4th at 562-63 (plaintiff has to show the defendant's speech at issue "fell within [defendant]'s 'bailiwick' as a Commissioner," such as threats to enact a harmful ordinance). In fact, the Complaint confirms that Sen. Hastings' announcement of his senator title failed to yield the alleged, intended results: the police responded by ordering Sen. Hastings and "his mob" to leave the venue. Compl. ¶ 77.

*Lindke* draws a bright and enforceable line between governmental action and political expression. Even loud, disruptive, or unwelcome speech by an elected official does not become a state act merely because of the speaker's title. *Lindke*, 601 U.S. at 197. Section 1983 turns on authority, not influence; law, not tone. It requires facts showing the actual exercise of governmental power. Plaintiffs plead none because none exist. Count I should therefore be dismissed with prejudice.

### B. Plaintiffs Were Not Deprived Of Any Constitutional Rights.

Even if Plaintiffs could establish state action (which they cannot), Count I is still subject to dismissal as Plaintiffs fail to plead facts that Sen. Hastings deprived them of First Amendment rights.[3] To establish First Amendment retaliation, Plaintiffs must show that they (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Here, however, Plaintiffs cannot meet the second element as they concede the caucus proceeded, votes were cast, the OTT nomination paperwork was submitted, and Plaintiffs' slate appeared on the April 2025 ballot. Compl. ¶¶ 96-98, 109. That certain Plaintiffs ultimately lost the election is immaterial, *see id.* at ¶ 110, as there is no constitutional right to be elected to office, *see Parks v. City of Horseshoe Bend,* 480 F.3d 837, 840 (8th Cir. 2007). Further, even if Plaintiffs could muster support for their claim that, "upon information and belief," citizens were unable to participate in the caucus because of Defendants' behavior, *see* Compl. ¶ 95, Plaintiffs have not established any standing to pursue the rights of unidentified "citizens." Plaintiffs' inability to plead facts supporting a deprivation of a constitutional right provides another basis for dismissal of Count I. *See Fries*, 146 F.3d at 457.

### C. Plaintiffs' § 1983 Conspiracy Claim Is Equally Implausible.

To plead a § 1983 conspiracy, "the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). That is, Plaintiffs must "show an underlying constitutional violation" *and* "demonstrate that the defendants agreed to inflict the constitutional harm." *Hurt v. Wise*, 880 F.3d 831, 842 (7th Cir. 2018).

---

[3] Notably, both the statutory (§ 1983) and constitutional (First Amendment) parts of Plaintiffs' claims contain a "state action" element as, "the Free Speech Clause prohibits only *governmental* abridgement of speech," not "*private* abridgement of speech." *Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019).

Plaintiffs cannot meet their burden. First, as set forth above, Plaintiffs have not and cannot show that their First Amendment rights were violated. *See supra* at § I.B.; *see Holm v. Village of Coal City*, 345 F. App'x 187, 191 (7th Cir. 2009) ("a showing of a constitutional violation is needed to recover on … a § 1983 claim of conspiracy"). Rather, Count II appears aimed at advancing a theory that the Seventh Circuit has swiftly rejected: providing a remedy to one party that represses the constitutional rights of the other. In *Tarpley v. Keistler*, the plaintiff alleged a violation of his First Amendment right to political association, claiming the defendant-Republican Central Committee Chairman conspired with the State in recommending a fellow Republican be hired for a public position that plaintiff applied for and was denied. 188 F.3d 788, 790-91 (7th Cir. 1999). The Court found the defendant's "actions constitute an exercise of his own First Amendment right to petition the government" *Id.* at 793. "We believe that what [plaintiff] characterizes as a conspiracy is more accurately and more commonly known as political advocacy, another protected form of free expression." *Id.* at 793-94. In evaluating the parties' competing constitutional rights, the Court found, "[plaintiff] may not be accorded a remedy that stifles [defendant]'s right." *Id.* at 795. It concluded, "political speech of a well-recognized genre is at stake, and we will not allow a claim of conspiracy to undermine it." *Id.* at 796.

Like the plaintiff in *Tarpley*, Plaintiffs here are attempting to stifle the Defendants' First Amendment rights to speech and assembly. The Complaint pleads no facts supporting a finding that any Defendant was acting under color of law or purporting to act in their official capacities. Rather, Defendants were assembled in a public space and engaging in political speech. Compl. ¶¶ 93-94. The competing rights at issue cannot be resolved through a decision that unilaterally favors the Plaintiffs.

Additionally, to get past the pleading stage on a § 1983 conspiracy claim, Plaintiffs "must point to more than 'mere allegations of joint action or a conspiracy' to demonstrate that the defendants acted under color of state law." *Scott v. University of Chicago Medical Center*, 107 F.4th 752, 758 (7th Cir. 2024) (quoting *Fries*, 146 F.3d at 458). Plaintiffs must allege Defendants had a meeting of the minds

10

and a real agreement to deny Plaintiffs constitutional rights. *Id.* "Merely working in parallel toward 'a common goal' is not the same as conspiring together." *Id.* Here, Plaintiffs vague conclusions--largely pled "on information and belief"--plainly fail to satisfy the pleading standard. Compl. ¶¶ 2, 27, 91, 100, 123-27. Count II should therefore be dismissed with prejudice.

## II. THE ILLINOIS ELECTION CODE CLAIMS ARE ALSO WITHOUT MERIT

Count IV alleges a violation of 10 ILCS 5/29-17 for deprivation of constitutional rights, and Count V claims conspiracy to prevent voting under 10 ILCS 5/29-18. Compl. ¶¶ 136-147. These causes of action are based on the same alleged conduct at issue in Plaintiffs' § 1983 claims. Precedent confirms that Plaintiffs' inability to establish a right to recovery under § 1983 sounds the death knell to their Election Code claims based on the same underlying allegations. *Gonzales v. Madigan*, 403 F. Supp. 3d 670, 680 (N.D. Ill. 2019) (entering summary judgment on a § 28-18 conspiracy claim where plaintiff could not establish that such action could "survive independently form his federal constitutional claims"); *Dempsey v. Johnson*, 2016 IL App (1st) 153377, ¶ 48 (finding that to prevail under § 29-17, "the plaintiff must prove the same two elements as in her section 1983 claim"). Thus, for the same reasons set forth above, Counts IV and V should be dismissed with prejudice.

## III. O'GRADY HAS NO LEGAL CLAIM FOR DEFAMATION OR FALSE LIGHT

"To state a claim for defamation, 'a plaintiff must allege that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages.'" *Evanger's Cat & Dog Food Co.*, 412 F. Supp. 3d at 896 (quoting *Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827, 831 (7th Cir. 2019)). If the speech falls into one of five recognized categories, the statement is considered defamatory *per se* and damages are presumed. *Id.* "If a statement does not fall within one of the *per se* categories, the statement can still be actionable as defamation *per quod* if the plaintiff can point to extrinsic facts showing that the statement is defamatory." *Id.* at 897 (citing *Bryson v. News Am. Publs., Inc.*, 672 N.E.2d

11

1207, 1221 (Ill. 1996)). Finally, for false light, a "[p]laintiff must establish that (1) she was placed in a false light before the public as a result of the defendant's action; (2) the false light in which she was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice." *Basile v. Prometheus Global Media*, 225 F. Supp. 3d 737, 744 (N.D. Ill. 2016). Whether speech is actionable or protected is an issue of law that must be determined at the outset. *See Skolnick v. Correctional Med. Servs.*, 132 F. Supp. 2d 1116, 1122 (N.D. Ill. 2001) (collecting Illinois cases).

At Count VI, Plaintiff O'Grady attempts to plead both defamation *per se* and *per quod*--two distinct torts--against Sen. Hastings for his "one or more false statements about Plaintiff O'Grady … as published in an article dated Dec. 4, 2024." Compl. ¶ 149; *see also id.* at ¶ 108. O'Grady's false light claim (Count VII) centers on the same facts. *Id.* at ¶¶ 157-59. Specifically, O'Grady takes issue with three statements allegedly published in the Chicago Tribune that he attributes to Sen. Hastings:

**Statement 1**: O'Grady was "circumventing the election law"
**Statement 2**: O'Grady was hosting a "public taxpayer event"
**Statement 3**: Sen. Hastings and his mob were "uninvited" to the caucus.

*Id.* at ¶¶ 149 & 158. O'Grady claims these "statement(s)" impute that he was unable to perform or lacked integrity in performing his duties as Township Supervisor and caused him "financial losses, harm to reputation, and physical distress." *Id.* at ¶¶ 153 & 156.

Plaintiffs decline to attach to their Complaint the news article at issue. However, "[i]t is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). This "incorporation-by-reference doctrine" allows the defendant to submit the at-issue document for the Court's review and "prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Id.* (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

12

The sound basis for the incorporation-by-reference doctrine is on full display here. O'Grady is attempting to hold Sen. Hastings accountable for the words of others and editorializing the quoted speech, further solidifying the meritless, retaliatory, and political nature of this lawsuit. Sen. Hastings respectfully submits the subject December 4, 2024 Chicago Tribune article at **Exhibit 1** so this Court may properly assess the viability of O'Grady's speech-based claims. *See* Compl. ¶¶ 108, 149 & 158.

### A. The Alleged Offending Statements Are Subject To An Innocent Construction.

"[A] statement that is reasonably capable of an innocent construction is not *per se* defamatory." *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (citations omitted). And, "where a false light claim is based on statements that are alleged to be defamation *per se*, the false light claim fails if the defamation *per se* claim also fails." *Basile*, 225 F. Supp. 3d at 743. "[T]he meaning of a statement is not a fact for the jury to find, but a 'question of law to be resolved by the court.'" *Lott*, 556 F.3d at 568 (citing *Tuite v. Corbitt*, 866 N.E.2d 114, 122 (Ill. 2006)). "To discern the meaning, courts must draw from the context of the statement and give the words their 'natural and obvious meaning.'" *Id.* "Courts need not weigh the relative value of competing constructions; instead, any reasonable, nondefamatory interpretation is the one that sticks." *Id.* (citing *Tuite*, 866 N.E.2d at 122-23).

When read within the full context of the Chicago Tribune article, Sen. Hastings' quote that Plaintiffs were "circumventing the election law" (**Statement 1**) is subject to an innocent construction. The article reports on information *received from O'Grady* regarding what precipitated the caucus: the OTT gathered 700 signatures but missed its August filing deadline; an objection to the OTT's petition was filed alleging the OTT "hadn't declared as an established party and didn't have enough signatures"; and, rather than gathering the requisite 1,800 signatures, the OTT decided to hold a caucus to select candidates. **Ex. 1**, pp. 3-4. A reasonable reader would perceive the OTT's actions as, in fact, "circumventing" or "managing to get around" the primary-election pathway and pursuing nomination

13

through an alternative mechanism.[4] Nothing about the context of the article supports O'Grady's conclusion that Sen. Hastings accused him of "lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Basile*, 225 F. Supp. 3d at 743 (quoting *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005)).[5] As **Statement 1** is subject to an innocent construction, it cannot serve as a basis for O'Grady to claim defamation *per se* or false light.

Additionally, a reasonable reader would not perceive **Statements 2** and **3** as being published *by Sen. Hastings*. The article confirms that **Statement 2** was made by Bernie O'Boyle, who reportedly "told the crowd, 'this is a public taxpayer event.'" **Ex. 1**, p. 2. And the utterance that people were "uninvited" to the caucus (**Statement 3**) appears to be attributable to the Orland Park police.[6] Accordingly, a claim of defamation *per se* or false light is not available on these claims; nor is defamation *per quod* viable where publication *by the defendant* is an element of the claim. *See supra* at 11, *Evanger's*.

### B. O'Grady Fails To Plead Special Damages To Satisfy Defamation *Per Quod*.

Defamation *per quod* requires a plaintiff plead special damages, meaning actual pecuniary loss resulting from the defendant's statement, in accordance with the heightened pleading standard of Rule 9(g). *Socorro v. IMI Data Search, Inc.*, No. 02 C 8120, 2003 WL 1964269, 2003 U.S. Dist. LEXIS 7400, at *6 (N.D. Ill. Apr. 28, 2003). O'Grady's vague reference to "financial losses" is plainly insufficient, *see* Compl. ¶ 156, and the only related facts pled are regarding Plaintiffs' legal expenses as a result of the "fraudulent slate" filed by a third-party, *id.* at ¶¶ 102-07, 113. There are no pecuniary damages even tangentially related to Sen. Hastings' speech. O'Grady's defamation *per quod* action and any false light

---

[4] The dictionary definition of "circumvent" is "to manage to get around especially by ingenuity or stratagem." *Circumvent*, MERRIAN-WEBSTER (available at: https://www.merriam-webster.com/dictionary/circumvent).
[5] *See, Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quoting 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d, § 1327 at 766 (1990)) ("The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material").
[6] *See* **Ex. 1**, p. 1 ("But a crowd of some 40 township residents were *told by Orland Park police* to leave the Orland Chateau banquet hall, 14500 S. La Grange Road, Orland Park, saying they were not invited to attend"), p. 3 ("Uniformed Orland Park *police were inside* and outside Orland Chateau, and at one point about *40 people who had been inside were told they had been 'uninvited'* to the event and told to leave") (emphasis added). The Complaint supports this interpretation. Compl. ¶¶ 77, 93.

claim relying on a *per quod* statement should therefore be dismissed. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003).

IV. **SEN. HASTINGS' ALLEGED CONDUCT WAS NOT WILLFUL AND WANTON**

Illinois does not recognize willful and wanton as an independent tort, but rather as "an aggravated form of negligence." *Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388, ¶ 22. A plaintiff "must establish the same basic elements of a negligence claim," as well as proof the defendant acted with "conscious disregard for the welfare of the plaintiff." *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010) (citation omitted). Here, Plaintiffs' threadbare recital of the tort elements is insufficient. They fail to plead any duty Sen. Hastings owed to Plaintiffs when "participating . . . in the political process." Compl. ¶ 164. The facts do not support that Plaintiffs' vague claims of "personal physical injury and emotional distress" were proximately caused by Sen. Hastings breaching a duty--let alone caused by *any* of his alleged conduct, period. Moreover, Sen. Hastings' alleged acts of interfering with a caucus that was ultimately successful does not rise to the level of willful and wanton conduct recognized by the law. *See Oravek v. Community Sch. Dist. 146*, 264 Ill. App. 3d 895, 900 (1st Dist. 1994) (finding truly willful and wanton conduct "should shock the conscience"); *Schmall v. Kohl's Dep't Store, Inc.*, No. 17 C 06747, 2018 WL 488271, 2018 U.S. Dist. LEXIS 8639, at *3-5 (N.D. Ill. Jan. 19, 2018) (dismissing willful and wanton claim, finding, "where there is an obvious lack of proof of such conduct, it is incumbent on the trial court, upon request, to withdraw that issue from the jury"). Count VII should therefore be dismissed.

WHEREFORE, for the reasons set forth above, the Defendant, Senator Michael E. Hastings, respectfully prays that this Court dismiss with prejudice all causes of action against the movant and enter any additional relief this Court deems just and proper.

    Respectfully submitted,

    /s/ Danessa P. Watkins
    Danessa P. Watkins

15

Ryan B. Jacobson, Esq. (6269994)
Danessa P. Watkins, Esq. (6314234)
AMUNDSEN DAVIS LLC
150 North Michigan Avenue, Suite #3300
Chicago, Illinois 60601
Jacobson Direct: (312) 894-3252
Watkins Direct: (312) 894-3376
rjacobson@amundsendavislaw.com
dwatkins@amundsendavislaw.com
*Attorneys for Senator Michael E. Hastings*